Mark L. Javitch (California SBN 323729)
Javitch Law Office
3 East 3rd Ave. Ste. 200
San Mateo CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com

*Attorney for Plaintiff*
And those similarly situated

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | |
|---|---|
| **ERIK SALAIZ**, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**AMITY ONE DEBT RELIEF** d/b/a **LENDBEE,** a California Corporation, **CLEARONE ADVANTAGE, LLC**, a Delaware Limited Liability Company, **THE AMERICAN LEGAL CLUB LLC**, a Delaware Limited Liability Company, and **LIGHTPOINT LAW GROUP, LLC,** a New Jersey Limited Liability Company,<br><br>Defendants. | Civil Action No.: 25-cv-00300<br><br>**CLASS ACTION COMPLAINT** |

## PRELIMINARY STATEMENT

Plaintiff ERIK SALAIZ, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants AMITY ONE DEBT RELIEF d/b/a LENDBEE (hereinafter "AMITY"), CLEARONE ADVANTAGE LLC (hereinafter "COA"), THE AMERICAN LEGAL CLUB LLC (hereinafter "ALC"), and LIGHTPOINT LAW GROUP, LLC (hereinafter "LLG") to stop their illegal practice of placing unsolicited telemarketing calls to the

telephones of consumers whose phone numbers were registered on the National Do Not Call Registry (hereinafter "NDNCR"), and to obtain redress for all persons injured by their conduct. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse,* Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from and/or on behalf of Defendants AMITY, COA, ALC, and LLG. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorney.

## NATURE OF THE ACTION

1. As part of their marketing, Defendants AMITY, COA, ALC, and LLG engage in illegal telemarketing and sent and/or initiated unsolicited phone calls to thousands of consumers whose phone numbers were registered on the NDNCR.

2. None of the Defendants obtained consent prior to placing unsolicited calls, and, therefore, are in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3. Congress enacted the TCPA in 1991 in response to "a torrent of vociferous consumer complaints about intrusive robocalls."

4. The TCPA instructed the Federal Communications Commission to "prescribe regulations to implement methods and procedures for protecting the privacy rights [of consumers] . . . in an efficient, effective, and economic manner and without the imposition of any additional charge to telephone subscribers." 47 U.S.C. § 227(c)(2).

5. The TCPA explicitly authorized the FCC to establish a "single national database" of telephone numbers belonging to those who object to receiving telephone solicitations. *Id*. § 227(c)(3).

6. By initiating these calls to people who have registered their phone numbers on the NDNCR database, Defendants Amity, COA, ALC, and LLG violated the privacy and statutory rights of Plaintiff and the Class.

7. Therefore, Plaintiff seeks an injunction requiring Defendants AMITY, COA, ALC, and LLG to stop their unconsented calling, as well as an award of actual and statutory fines to the Class members, together with costs and reasonable attorneys' fees.

## PARTIES

8. Plaintiff Erik Salaiz is an individual residing in El Paso County, Texas.

9. Defendant AMITY is a corporation organized and existing under the laws of California.

10. Defendant COA is a limited liability company organized and existing under the laws of Delaware. COA's registered agent is Corporation Service Company, 251 Little Falls Drive, Wilmington DE 19801.

11. Defendant ALC is a limited liability company organized and existing under the laws of Delaware. Defendant ALC's registered agent is The First State Registered Agent Company, 1925 Lovering Ave, Wilmington DE 19806.

12. Defendant LLG is a limited liability company organized and existing under the laws of New Jersey. Defendant LLG's registered agent is Northwest Registered Agent LLC, 971 US HIGHWAY 202N STE N, BRANCHBURG, NJ 08876.

13. Defendants AMITY, COA, ALC, and LLG are hereinafter referred to collectively as "Defendants".

## JURISDICTION AND VENUE

14. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

15. This Court has specific personal jurisdiction over Defendants because Defendants caused the violating calls to be sent to Plaintiff in this District.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the injury occurred in this District.

## COMMON FACTUAL ALLEGATIONS

17. Defendants AMITY and COA offer debt relief services to consumers nationwide.

18. Defendants ALC and LLG offer debt relief legal services to consumers nationwide.

19. Defendants AMITY, COA, ALC, and LLG all operate as a common enterprise.

20. Defendant AMITY placed thousands of unsolicited calls soliciting Plaintiff and the putative class for debt relief services on behalf of all Defendants.

21. Defendants failed to obtain consent from recipients, nor did they check the NDNCR.

## PLAINTIFF'S FACTUAL ALLEGATIONS

22. Defendants all offer debt relief services to consumers nationwide.

23. Defendants all operate as a common enterprise and share the same clients.

24. Defendants target consumers who obtain at least more than ten thousand dollars in unsecured debt.

25. As part of their telemarketing campaign, and to generate new business for this common enterprise, Defendant AMITY makes unsolicited calls to thousands of consumers residential telephone numbers on behalf of all Defendants.

26. Defendants COA, ALC, and LLG all authorize and approve of the telemarketing campaign conducted by AMITY.

27. Defendants COA, ALC, and LLG authorize Defendant AMITY to act as their agent.

28. Defendants understand their telemarketing campaign is in violation of the TCPA.

29. Defendants willfully engage in illegal telemarketing because it benefits each of them financially.

30. As per the FTC and FCC, for profit sellers who make outbound calls to sell goods and services (either directly or through their agents such as AMITY) to residential telephone numbers are required to subscribe to the NDNCR database and pay a fee for each area code they plan to call.

31. As per the FTC and FCC, for profit sellers who make outbound calls to sell goods and services (either directly or through their agents such as AMITY) to residential telephone numbers are required to download the NDNCR list and remove such telephone numbers from their calling lists and update their calling lists every thirty-one days.

32. Upon information and belief, none of the Defendants scrub their calling list against the NDNCR as required by the FTC and FCC.

33. Defendant AMITY has been sued for both TCPA and Texas Bus. & Com. Code § 302.101 violations prior to this complaint, *Lim v. Amity One Debt Relief*, No. 2:24-cv-04778-MEF-AME (D.N.J. Apr. 11, 2024), and *Cacho v. Amity One Debt Relief, et al*, No. 3:24-cv-00160-KC (W.D. Tex. May 14, 2024) and willfully continue their illegal behavior.

34. Plaintiff successfully registered his personal cell phone (XXX) XXX-6688 on the NDNCR since March 7, 2024.

35. Plaintiff's telephone number ending in -6688 has been on the NDNCR at all times relevant to this Complaint.

36. Plaintiff's telephone number ending in -6688 is a residential number.

37. Plaintiff's telephone number ending in -6688 is used for personal purposes and is not associated with business.

38. Despite this, Defendants' telemarketing campaign reached Plaintiff's telephone number ending in -6688 on at least three (3) occasions within a thirty-day period on the following dates, and times ("the calls").

   1.) September 24, 2024, at 1:39pm MST, from Caller ID (281) 588-0676
   2.) September 26, 2024, at 1:10pm MST, from Caller ID (281) 868-6738
   3.) October 4, 2024, at 9:36am MST, from Caller ID (281) 867-5915

39. Plaintiff did not provide his prior express written consent to receive any of the calls.

40. Plaintiff answered each of the calls and was solicited for debt relief services by Defendants.

41. AMITY'S agents gave the same exact sales pitch to Plaintiff on each call that stated,

> "The reason for my call is that our company is running a new debt settlement program and we are reaching out to those people who have debt so just to confirm how much debt do you have on your credit cards?"

42. The calls were annoying to Plaintiff as they disturbed Plaintiff during working hours.

43. Plaintiff advised the agent on the first call that he was not interested and not to call back.

44. Despite Plaintiff's do not call request, Defendants' telemarketing campaign continued to reach Plaintiff's telephone number ending in -6688.

45. On the third call, October 4, 2024, Plaintiff further engaged in the call to investigate who continued to harass Plaintiff with unsolicited calls.

46. Plaintiff was connected to an agent employed with AMITY named Mario Rosales (hereinafter "Rosales").

47. Rosales asked Plaintiff a series of qualifying questions and solicited Plaintiff for a debt settlement program on behalf of all Defendants.

48. Rosales advised Plaintiff the cost of the program would be $1295.06 per month for sixty (60) months.

49. Rosales confirmed to Plaintiff that he was employed with AMITY.

50. While on the call with Rosales, Plaintiff received an email from Rosales from email onespansalesforceintegration@clearoneadvantage.com.



51. OneSpan is a company that provides a software system to companies that allows them to send documents to their clients and obtain the client's e-signature according to OneSpan's website https://www.onespan.com.

52. Upon information and belief, Defendant AMITY and COA share an account with OneSpan that allows AMITY to prepare and send documents to new clients.

53. The email Plaintiff received from Rosales contained a Debt Resolution Agreement for Plaintiff to sign.

54. The Debt Resolution Agreement was prepared by Rosales.

55. The Debt Resolution Agreement included the services of Defendants COA, ALC, and LLG.

56. The Debt Resolution Agreement was sent to Plaintiff that already included the signatures from officers and/or managers of Defendants COA, ALC, and LLG.

57. The pre-signed Debt Resolution Agreement acknowledges the COA, ALC, and LLG all authorize AMITY to act as their agent by preparing new agreements and sending to new clients on their behalf.

---

Page 5

**ClearOne Advantage, LLC**
3500 Boston St Ste 413
Baltimore, MD 21224
(888) 785-5376

**Debt Resolution Agreement**

This Debt Resolution Agreement, along with each of the documents referenced in the subsection entitled "Documents Incorporated by Reference" in Section 7, (collectively the "Agreement"), is made by and between ClearOne Advantage, LLC, a Delaware limited liability company ("we," "us" or "our") and Erik Salaiz (individually and collectively, "you" or "your") residing at 6325 Navajo Avenue, El Paso, TX 79925. This Agreement will not be effective until we receive from you a signed (or initialed) copy of each required document ("Effective Date"). You may sign or initial manually or electronically.

B. **Program Length**: While we have estimated a program length of 60 months that we believe is appropriate to resolve your Debts, the actual length of your program will depend upon several factors, including but not limited to your ongoing ability to make your program deposits, as described in more detail in Section 3, below, your Creditors' willingness to settle your Debts and the length of any structured settlement of a Debt that we may obtain for you. In the event that your debts are not fully settled at the end of the estimated program length, you agree that your Dedicated Account Provider may automatically continue your drafts unless you notify the provider or us, in writing, that you do not wish to extend the program. At that time, any debts that remain unsettled will be removed from the program and unearned monies will be returned to you.

C. **"Difficult Creditors"**: Certain creditors are more difficult to negotiate with than others, some



Page 11

You represent that you have read, understand and agree to be bound by the terms of this Debt Resolution Agreement, as set forth above and in the exhibits, schedules and attachments hereto. You acknowledge that the terms and conditions of this Agreement have been explained to your full satisfaction and that you have no unanswered questions about the program or this Agreement.

_____    _____
Client Signature                     Co-Client Signature

_____    _____
Date                                         Date

ClearOne Advantage, LLC

_(signature)_

Tomas Gordon, CEO

Page 35

# AMERICAN LEGAL CLUB

## Member Service Agreement

This Member Services Agreement ("Agreement") is entered into on the date indicated below by and between American Legal Club, LLC ("ALC" or the "Company"), located at 1 Eves Drive Suite 111, Marlton, NJ 08053, and Erik Salaiz ("you" or the "Member"). The Member and all Covered Persons will receive the Services as outlined in this Agreement. The Services are provided in return for your payment of a monthly membership fee in compliance with the terms and conditions of this Agreement. The Services will be provided by lawyers appointed by ALC, who are licensed lawyers (the "Network Attorney(s)"). All requests for Services must be directed to the Network Attorney in your state of residence. ALC is not a law firm and does not offer legal advice. For legal matters that arise within the United States and outside your state of residence, the Company or Network Attorney may assign a lawyer who is licensed in the appropriate jurisdiction.

E. **Membership Fees.** You shall pay ALC a monthly Membership Fee of 33.95 on the 10/15/202_ of each month. The Membership Fee (the "Fee") is non-refundable and secures the availability of Services. The Membership Fee includes coverage for all Legal Services described in Section 2 of this Agreement, subject to restrictions and additional discounted rate fees for certain services. Your first monthly Fee payment must have been received and applied to your Plan to be eligible for coverage; lawsuits served prior to your first payment are not eligible for coverage.

By signing below, both parties agree to the terms of this Agreement. You, the Client, may cancel this transaction at any time prior to midnight of the third (3rd) business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right.

American Legal Club                                  You

By: _Patrick Williams_                         By: _____
Date: 10/4/2024                                     Date: _____

ALC Membership Agreement pg. 10                                          v. 03.20.24



58.     Under the program details in the Debt Resolution Agreement, it states the total success fee that Plaintiff would make towards the program would be $25,154.36.

59.     Defendants AMITY, COA, ALC, and LLG would all generate a profit through the success fee made by Plaintiff.

60.     The email and Debt Resolution Agreement Plaintiff received from Rosales identified Defendants AMITY, COA, ALC, and LLG all being connected and tied to the alleged calls.

61.     Plaintiff's lead was generated through illegal telemarketing.

62.     Upon information and belief, Plaintiff received additional unsolicited calls from and/or on behalf of Defendants within the past two years that are unknown to Plaintiff at this time but will be revealed through Defendants' call records in discovery.

63.     Upon information and belief, Defendants' nationwide telemarketing campaign has reached hundreds of thousands of consumers residential telephone numbers that are registered to the NDNCR and will be revealed through Defendants' call records in discovery.

64.     To date, according to the Texas registration database, https://direct.sos.state.tx.us/telephone/telephonesearch.asp, none of the Defendants obtained a

valid solicitation registration certificate as required to make telephone solicitations to Texas residents either directly or through their agents.

65. None of the Defendants qualify for an exemption under § 302.053.

66. Plaintiff was harmed by the calls.

67. Plaintiff was temporarily deprived of legitimate use of his phone because his privacy was improperly invaded. Moreover, the calls injured Plaintiff because they were frustrating, obnoxious, annoying, and were a nuisance and disturbed the solitude of Plaintiff.

## BASIS FOR LIABILITY

68. Plaintiff incorporates by reference all the above paragraphs as though fully repeated herein.

69. Even if Defendants COA, ALC, and LLG did not personally make the TCPA violating calls to Plaintiff, they are liable for the TCPA violations under the following theories of vicarious liability: Actual Authority, Apparent Authority, or Ratification.

## ACTUAL AUTHORITY

70. Plaintiff incorporates by reference all the above paragraphs as though fully repeated herein.

71. Defendants COA, ALC, and LLG authorized and hired AMITY to generate prospective customers through illegal telemarketing calls.

72. Accordingly, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See In re Rules & Regulations Implementing the TCPA, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995) (emphasis added).

73. In their January 4, 2008, ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id*. (specifically recognizing

"on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

74. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *In re DISH Network*, 28 FCC Rcd 6574, 6586 (2013).

75. Defendant AMITY solicited Plaintiff on behalf of Defendants COA, ALC, and LLG. Accordingly, AMITY had COA, ALC, and LLG's actual authority to solicit Plaintiff through illegal telemarketing calls.

## APPARENT AUTHORITY

76. Plaintiff incorporates by reference all the above paragraphs as though fully repeated herein.

77. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct. 28 CC Rcd at 6592 (¶ 46).

78. Defendants COA, ALC, and LLG authorized AMITY to generate prospective business for them through illegal telemarketing.

79. AMITY called and solicited Plaintiff for debt relief services on behalf of Defendants COA, ALC, and LLG. The integration of their sales efforts was so seamless that it appeared to Plaintiff that all Defendants appeared to be acting together as the same company.

80. Plaintiff reasonably believed and relied on the fact that AMITY had received permission to sell, market, and solicit the services of Defendants COA, ALC, and LLG.

81. As a direct and proximate result of the alleged illegal phone calls – which were made on behalf of and with the apparent authority of Defendants COA, ALC, and LLG, Plaintiff and Class members suffered actual damages, including their time to answer the violating calls, depleted battery life, wasted time, invasion of their privacy and the nuisance of receiving the calls.

## RATIFICATION

82. Plaintiff incorporates by reference all the above paragraphs as though fully repeated herein.

83. Defendants COA, ALC, and LLG knowingly and actively accepted business that originated through the illegal calls placed by AMITY.

84. By accepting these contacts with the robocall victims, AMITY "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of Defendants COA, ALC, and LLG, as described in the Restatement (Third) of Agency.

85. AMITY called Plaintiff to solicit him for debt relief services on behalf of all Defendants.

86. Defendants COA, ALC, and LLG received Plaintiff as a new prospective customer from AMITY.

87. Defendants COA, ALC, and LLG ratified AMITY's TCPA violations by knowingly accepting the benefits of new customers and revenue despite the fact that the sale was generated through illegal calling.

88. Defendants COA, ALC, and LLG further ratified AMITY's TCPA violations by being aware of the violations, being willfully ignorant of the violations or by being aware that such knowledge was lacking.

89. As a direct and proximate result of the alleged illegal phone calls, Plaintiff and Class members suffered actual damages, including their wasted time to answer the violating calls, the monies paid to receive the calls, invasion of their privacy and the nuisance of receiving the calls.

90. The calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

## CLASS ALLEGATIONS

91. **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of Plaintiff and a class defined as follows:

   i. **TCPA Class**. All persons in the United States who: (1) from the last 4 years to present (2) Defendants called (3) whose telephone numbers were registered on the National Do Not Call registry for more than 30 days at the time.

   ii. **Texas TCPA Subclass**. All persons in the United States who: (1) from the last 4 years to present (2) Defendants called (3) whose telephone numbers were registered on the National Do Not Call registry for more than 30 days at the time.

   iii. **Texas Registration Class**. All persons in Texas who: (1) from the last 4 years to present (2) Defendants called.

92. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants', Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5)

Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

93. **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiff, but individual joinder is impracticable. On information and belief, Defendants sent and/or initiated unsolicited calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendants' records.

94. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of the Defendants uniform wrongful conduct and unsolicited calls.

95. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

96. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinge on Defendants conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

97. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any

questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    a. Whether the unsolicited calls were caused by Defendants;

    b. Whether the unsolicited calls promoted Defendants products or services;

    c. Whether Defendants checked the phone numbers to be called against the NDNCR;

    d. Whether Defendants obtained written express consent prior to placing unsolicited calls;

    e. Whether members of the Class are entitled to treble damages based on the knowingness and/or willfulness of the Defendants conduct.

98.     **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the Defendants actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from the Defendants misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

**First Cause of Action:**
**Violation of 47 U.S.C. § 227(c)**
**Do Not Call Provision**
**(On behalf of Plaintiff and the TCPA Class)**

99. Plaintiff incorporates by reference all the above paragraphs as though fully repeated herein.

100. The telephone numbers of Plaintiff and the Class are registered on the National Do Not Call Registry.

101. Defendants and/or their agents placed unsolicited phone calls to Plaintiff and the Class members' DNC registered telephones without having their prior written consent to do so.

102. Defendants' actions constitute violations of 47 U.S.C. § 227(c) of the TCPA, by soliciting telephone numbers listed on the Federal Government's National Do Not Call Registry 47 C.F.R. § 64.1200(c)(2).

103. Defendants' phone calls were made for the commercial purpose of soliciting Defendants' debt relief services.

104. As a result of their unlawful conduct, Defendants repeatedly invaded Plaintiff's and the Class's personal privacy, causing them to suffer damages.

105. Plaintiff is entitled to an award of at least $500 in damages for each such violation (47 U.S.C. § 227(c)(5)(B)) or $1,500 if the violation is knowing or willful. 47 U.S.C. § 227(c)(5).

106. Plaintiff also seeks a permanent injunction prohibiting Defendants from making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry.

107. Plaintiff incorporates the foregoing allegations as if set forth herein.

**Second Cause of Action**
**Violations of Texas Bus. & Com. Code § 305.053**
**(On behalf of Plaintiff and the Texas TCPA Subclass)**

108.    Plaintiff incorporates the foregoing allegations as if set forth herein.

109.    The foregoing acts and omissions of Defendant constitute multiple violations of the Texas Bus. & Com. Code § 305.053, by making non-emergency telemarketing calls to Plaintiff's cellular telephone number without his prior express written consent in violation of 47 U.S.C. § 227 et seq.

110.    Plaintiff seeks for himself an award of at least $500.00 in damages for each such violation. Texas Bus. & Com. Code § 305.053(b).

111.    Plaintiff seeks for himself an award of up to $1,500.00 in damages for each such knowing or willful violation pursuant to Texas Bus. & Com. Code § 305.053(c).

**Third Cause of Action:**
**Violations of The Texas Bus. & Com. Code § 302.101**
**Failure to obtain a Telephone Solicitation Registration Certificate**
**(On behalf of Plaintiff and the Texas Registration Class)**

112.    Plaintiff incorporates by reference all the above paragraphs as though fully repeated herein.

113.    Defendants placed illegal telemarketing calls to Plaintiff and the putative class without having a valid telephone registration certificate as required under Tex. Bus. Com. Code § 302.101.

114.    A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such.

115.    As a result of Defendants' violations of the Texas Bus. & Com. Code § 302.101, Plaintiff seeks damages of up to $5,000 for each violation of Texas Bus. & Com. Code § 302.302(a), as well as all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ERIK SALAIZ, individually and on behalf of the Class, prays for the following relief:

A. An order certifying the Class as defined above, appointing Plaintiff as the Class representative and appointing his counsel as Class Counsel;

B. An order declaring that Defendants' actions, as set out above, violate § 227(c) of the TCPA;

C. An order declaring that the Defendants' actions, as set out above, violate §§ 302.101 and 305.053 of the Texas Bus. & Com. Code;

D. An order declaring that the Defendants' actions, as set out above, violate the TCPA willfully and knowingly;

E. An award of $1,500 per call in statutory damages arising from the TCPA § 227(c) for each intentional violation;

F. An order declaring that the Defendants' actions, as set out above, violate the Texas Bus. & Com. Code willfully and knowingly;

G. An award of $1,500 per call in statutory damages arising from the Texas Bus. & Com. Code § 302.101 for each intentional violation;

H. An award of $5,000 in statutory damages arising from the Texas Bus. & Com. Code § 302.101 for each intentional violation;

I. An injunction requiring the Defendants to cease placing unlawful calls;

J. An award of reasonable attorneys' fees and costs; and

K. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: August 6, 2025　　　　　　　　Respectfully submitted,

By: /s/ Mark L. Javitch
Mark L. Javitch (California SBN 323729)
JAVITCH LAW OFFICE
3 East 3rd Ave. Ste. 200
San Mateo CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com

*Attorney for Plaintiff and those similarly situated*

## CERTIFICATE OF SERVICE

On the date stated below, I filed this document electronically with the United States District Court for the Western District of Texas CM/ECF system.

Notification was therefore automatically sent through the CM/ECF system to:

- United States District Court for the Western District of Texas

I declare under penalty of perjury that the foregoing is true and correct. Executed on the date stated below.

Date: August 6, 2025                           By: /s/ Mark L. Javitch
                                                                                               Mark L. Javitch